*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. T. RILEY, Minor.

UNPUBLISHED
October 5, 2023

No.   364610
Wayne Circuit Court
Family Division
LC No.   2019-000631-NA

Before:  REDFORD, P.J., and K. F. KELLY and RICK, JJ.

RICK, J. (*dissenting*).

I respectfully dissent from the Court's decision to affirm the termination of mother's parental rights.  In my view, statutory grounds for termination were entirely nonexistent in this case.  Instead, mother has merely been penalized for her inability to afford her own housing and for minor marijuana use, neither of which have any demonstrated negative effect on her ability to parent GTR.  I would reverse the order terminating mother's parental rights as insufficiently justified by the record.

## I.  FACTUAL BACKGROUND

The original petition in this case was filed in September 2022, requesting that GTR be removed from mother's care and that mother's parental rights be terminated under MCL 712A.19b(3)(g), (i), and (j).  As the majority points out, mother lost her parental rights to six other children earlier in 2022.  According to a Children's Protective Services (CPS) worker assigned to the case, respondent's parental rights to these children were terminated for improper care, unsuitable housing, physical abuse, and a failure to adhere to a case service plan (CSP).  The conditions leading to termination of mother's parental rights to GTR in the instant case included a failure to obtain her own housing and failure to comply with a CSP, particularly with regard to drug testing requirements.  Based on these issues, petitioner claimed that GTR was at risk of harm if returned to mother's care and custody.

Regarding mother's drug use, a Children's Protective Services worker testified at the termination hearing that mother admitted she used marijuana before discovering that she was pregnant with GTR.  However, the worker agreed that GTR did not suffer from withdrawal symptoms or any other medical issues related to mother's drug use while pregnant.  Substance abuse was also an issue in mother's past termination cases.  The CPS worker testified that some

-1-

or all of mother's other children tested positive for marijuana at birth. At the hearing, mother testified that she used to smoke marijuana but chose to quit because she believed it negatively affected her "emotions and concentration[.]" Mother submitted to two drug screens prior to the termination hearing, both of which returned negative results.

Regarding housing, the CPS worker testified that mother was residing with a friend and his wife. The worker further testified that mother initially lied and stated that this friend was her brother before later admitting that they were not related by blood, but instead knew each other through church. The worker further testified that GTR slept in a bed with mother and did not have any bedding of his own. Despite these concerns, however, the worker agreed that the home was generally appropriate for children. A foster care worker testified that she had concerns about mother's housing situation and believed that GTR "should not be returned to [mother] at this time." Mother testified that she had recently obtained new employment, applied for a mortgage, and found a realtor to assist her with finding a home. In the meantime, she testified that GTR had "five different beds" in the home to choose from, explaining that she had received a bed for GTR from the foster care agency and had gone to pick up another bed from a home where she used to live.

The CPS worker opined that termination was in GTR's best interests primarily because mother failed to rectify the problems with her housing and drug use that led to the six earlier terminations. The CPS worker also stated that respondent made no efforts to reunify with GTR since the petition was filed that September. However, the foster care worker testified that mother had attended parenting time visits with GTR, which took place on Tuesdays and Fridays for one hour each visit. The foster care worker opined that mother was appropriate with GTR and that she "holds him, talks to him, changes diapers, feeds him. They watch movies on her phone. She hugs and kisses him. She's very affectionate." The foster care worker also noted that mother had attended all of GTR's doctor's visits, as well as three occupational therapy sessions, which GTR had recently begun attending.

After the close of testimony, the trial court opined as follows:

[Mother], contrary to what you said today, you were inconsistent with visits [in the earlier case]. The Court gave you a lot of leeway in that regard, given the fact that you did have new children and those children had special needs, however, you just never rose to the occasion of being what your children needed. In regards to housing, there were a lot of promises made, none of which came to fruition. Now, we sit here, December 5th, 2022, some years later, and it's not in any different situation than it was with the other children. You have always had jobs, I will say that. You've always worked, that was never an issue. The issue was housing. The issue was substance abuse. And quite frankly, following through with the services that were required for reunification. Again, all contrary to what you testified to today. You indicated you did not consume marijuana, and quite frankly, it's not what's said, but essentially, you were surprised [GTR] was positive for marijuana, however, you have a history. I don't know which worker it was that testified about the dishonesty. If it's dishonesty or delusion, I don't know, but there's something there. This child—and again, I think it was maybe [the foster care worker] who testified that the child has occupational therapy that you have been going to, however, with the many things you didn't go to, again, it's contrary to what you

-2-

indicated. I remember I presided over those things, and you were not consistent with any of that. The housing, I'm sorry about the bed. You said the bed wasn't there for [GTR], but you had a bed, you got five beds. The Court cannot and will not put [GTR] through what those other children went through, and that is a mother who's inconsistent in showing reunification efforts. This child deserves and needs permanence and stability. Stability is what you cannot and have not been able to show that you can provide, and all children need stability . . . .

The trial court subsequently entered order of adjudication taking jurisdiction over GTR and an order terminating respondent's parental rights under MCL 712A.19b(3)(i) and (j).

## II. STATUTORY GROUNDS

Termination under MCL 712A.19b(3)(i) is appropriate where "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights." Termination is appropriate under MCL 712A.19b(3)(j) where "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

A thorough review of the record indicates that the trial court's ruling on both statutory grounds for termination is entirely unsupported by the facts of the case. The record indicates that mother's rights to her other children were terminated as a result of physical abuse, a failure to provide proper care and support for the children, and a failure to comply with a CSP, including a failure to regularly visit the children and obtain appropriate housing. As an initial matter, there were no allegations of physical abuse in this case. Regarding visitation, mother rectified her past failure to visit with her children by attending parenting time visits with GTR and going to his doctor's appointments. No concerns about mother's interactions with GTR have ever been reported; to the contrary, the foster care worker assigned to the case testified that mother was always appropriate with GTR, made a concerted effort to interact with him during visits, and was actively involved in his medical care. And as to housing, the CPS worker agreed that the home where she and GTR were staying prior to his removal from her custody was generally appropriate for children. Furthermore, contrary to what the CPS worker testified, mother testified that she had obtained a bed for GTR, applied for a mortgage, and contacted a realtor to help her find independent housing. While the court noted its concerns about mother's failure to find independent housing, it never articulated why the home where mother was staying was an inappropriate place for GTR to live. The court also wholly discounted that the CPS and foster care workers agreed the home was appropriate for children, and disregarded mother's testimony that she was trying to find independent housing.

Regarding mother's substance use, the court was overly concerned about the fact that GTR tested positive for marijuana when he was born, and dismissed the CPS worker's testimony that GTR never suffered any negative effects or withdrawal symptoms as a result. It is true that a parent's failure to resolve substance abuse issues that negatively affect his ability to parent or cause a risk of harm to a child can establish sufficient grounds for termination. *In re Richardson*, 329 Mich App 232, 253-256; 961 NW2d 499 (2019). However, there was no evidence that mother's marijuana use affected her ability to parent GTR, and even if it had, mother testified that she had

stopped using marijuana and presented two drug tests confirming that she tested negative for marijuana. Accordingly, I would conclude that insufficient evidence was presented to support the termination of mother's parental rights under MCL 712A.19b(3)(i) and (j).

This case exemplifies the drawbacks of Michigan's current child welfare legislative scheme. For example, MCL 712A.19b(3)(i) effectively presumes that a parent who loses their parental rights to one child should also be at risk of losing their parental rights to their other children as well, regardless of what steps the parent takes in the meantime to rectify the conditions that led to the earlier termination. From the time that mother's rights to her other children were terminated to the time that her rights to GTR were terminated, mother made significant improvements and was well on her way to showing that she could properly parent GTR. But because the earlier terminations weighed so heavily against her, she was never given a chance to avoid the termination of her parental rights to GTR. Thus, in this case, mother was essentially doomed to lose her parental rights, and the efforts she made at improvement were futile. Applying MCL 712A.19b(3)(i) to such cases, particularly where the parent has tried to remedy the issues that led to the prior termination, is unjust to both parent and child.

This is not to say that MCL 712A.19b(3)(i) does not have its uses. Obviously, it is valuable when applied in cases involving "serious and chronic neglect or physical or sexual abuse," as set forth in the statute. However, those conditions did not exist here. It is my opinion that trial courts and DHHS may be too quick to use subsection (3)(i) as a catch-all provision, even where the parent should ostensibly be given a chance to show that they can rectify the conditions that led to a previous termination. We should take care not to lose sight of the principle that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982) (quotation marks and citations omitted). Even parents who have neglected their children should be given an opportunity to prove that they can rectify the issues leading to state intervention. Mother was given no real opportunity to do so here. Accordingly, I would reverse and remand for reinstatement of mother's parental rights to GTR.

/s/ Michelle M. Rick